UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| **DAVID ABELLARD, JR.** and | § | |
| **DERRICK ABELLARD,** individually and | § | |
| on behalf of those similarly situated, | § | |
| | § | **Case No.:** |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **DEMAND FOR JURY TRIAL** |
| | § | |
| **NATIONSTAR MORTGAGE, LLC.** | § | |
| **d/b/a MR. COOPER**, | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

## CLASS ACTION COMPLAINT

Plaintiffs DAVID ABELLARD, JR. and DERRICK ABELLARD ("Plaintiffs" or "the Abellards") by and through their counsel, Scott Hirsch Law Group, PLLC, and Rodriguez Law & Advocacy, P.A., brings this class action lawsuit for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., ("FDCPA"), Section 559.72(9), Florida Statutes ("Florida Consumer Collection Practices Act" or "FCCPA"), and Section 701.04(1)(a), Florida Statutes.  In support Plaintiffs allege the following:

## NATURE OF THE ACTION

1.     This is a putative class action brought through Fed. R. Civ. P. 23.  It is brought by Florida homeowners on their own behalf and on behalf of all others similarly situated, against one of the country's largest loan servicers, NATIONSTAR MORTGAGE, LLC d/b/a MR. COOPER ("Defendant" or "NATIONSTAR").  NATIONSTAR is employed by lenders to "service" mortgages on their behalf.

2.     This class action seeks to recover from NATIONSTAR improper fees which are excessive in nature and improperly charged by NATIONSTAR as being owed by the mortgagor.

1

These fees are, in many instances, fraudulent in nature and are added onto the fees the owner owes on the distressed property; as a means of providing fees to NATIONSTAR and the lenders they service.   Plaintiff and the Class Members are Florida homeowners whose homes have been in foreclosure. NATIONSTAR is servicer of the mortgage loans which encumber Plaintiff's and Class Members' homes.  As a servicer, NATIONSTAR regularly acts as a debt collector.

3.       The properties at issue in this case, owned by the Plaintiffs and the Class Members, are all encumbered by a standard note and mortgage agreement that is essentially uniform in form and substance.  Attached to mortgage agreement is a standard Condominium Rider which provides in pertinent part as follows:

> **Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included the term "extended coverage," and any other hazards, including but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provisions in Section 3 for Periodic Payment to Lender of yearly premium installments for property insurance on the Property; and (ii) Bower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

4.       At all times material, there was in place a master flood and/or hazard insurance policy, which satisfied the Condominium Rider, for the properties owned by the Plaintiffs and the Class Members.

5.       Additionally, at all relevant time periods, NATIONSTAR had notice that Plaintiffs' condominium was covered by a master flood and/or hazard insurance policy. NATIONSTAR took no action after receiving this notice; and it did not in any way challenge the adequacy of the blanket flood and/or hazard insurance.

6.      Specifically, at issue, NATIONSTAR charged to Plaintiffs and the Class Members, who are condominium owners, flood and/or hazard insurance premiums that were not required by the mortgage instrument, condominium documents, or applicable law. The standardized mortgage agreements, were are essentially identical and applicable to Plaintiffs and all Class Members, that NATIONSTAR services, permits them to unilaterally charge, and collect, funds from condominium owners subject to these mortgages, such as flood and/or hazard insurance.  However, NATIONSTAR may do so only where the condominium association has not already purchased flood or hazard insurance that covers the member condominiums.

7.      Here NATIONSTAR, charged premiums for flood or hazard insurance even where it knew that the subject property was already covered by a master or blanket insurance policy, paid for by the condominium association, making the additional flood and/or hazard insurance charged both excessive and contrary to law.

## PARTIES JURISDICTION AND VENUE

8.      Plaintiff, DAVID ABELLARD, JR is an individual citizen of the State of Florida, residing in both Miami-Dade and Broward Counties.  At all times material, he has occupied the property at issue, located at 450 Alton Road, Unit 2308, Miami Beach, FL 33139.

9.      Plaintiff, DERRICK ABELLARD is an individual citizen of the State of Florida, residing in both Miami-Dade.  At all times material, he has occupied as his primary residence, the property at issue, located at 450 Alton Road, Unit 2308, Miami Beach, FL 33139.

10.     Defendant, NATIONSTAR is a Delaware limited liability corporation with its principal place of business in Texas.

11.     This Court has general diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is

complete diversity between the Plaintiffs and Defendants.  This Court also has jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§1332(d).  CAFA's requirements are satisfied in that (1) the members of the Class exceed 100; (2) the citizenship of at least one proposed Class member is different from that of the Defendant; and (3) the matter in controversy, after aggregating the claims of the proposed Class members, exceeds $5,000,000.00, exclusive of interest and costs.

12.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises out of the FDCPA, a federal statute.  The Court also has supplemental jurisdiction over the FCCPA and Section 701.04(1)(a), Florida Statutes claims under 28 U.S.C. § 1367, because these claims are so related to the federal FDCPA claims that they form part of the same case or controversy under Article III of the United States Constitution.

13.     Venue is proper in the United States District Court in and for the Southern District of Florida pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in this district.

## **APPLICABLE LAW**

### **FDCPA**

14.     The purpose of the FDCPA is "to eliminate abusive debt collection practices . . . to promote consistent State action to protect consumers against debt collection abuses…" 15 U.S.C. § 1692.

15.     The FDCPA generally prohibits debt collectors, including NATIONSTAR, from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt" [§ 1692e], and the use of "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f, including, but not limited to:

4

a. False representations or misrepresentations of "the character, amount, or legal status of any debt." *Id.* at § 1692e(2)(A);

b. False representations or misrepresentations of any "compensation which may be lawfully received by [the] debt collector for the collection of a debt." *Id.* at § 1692e(2)(B);

c. "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* at § 1692f (1); and

d. "The use of any false representation or deceptive means to collect or attempt to collect" a debt. *Id.* at § 1692e (10).

## FCCPA

16.    The purpose of the FCCPA is to "provide the consumer with the most protection possible." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) (citing § 559.552, Fla. Stat.).

17.    Like the FDCPA, the FCCPA prohibits persons, including NATIONSTAR, from engaging in certain abusive practices in the collection of consumer debts. *See generally* § 559.72, Fla. Stat.

18.    Specifically, the FCCPA states that no person, including NATIONSTAR, shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." § 559.72(9), Fla. Stat.  The FCCPA defines both "debt" and "consumer debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in

which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." § 559.55(6).  A "consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt." § 559.55(8).

## FACTUAL ALLEGATIONS

19.     On September 11, 2013, 450 CWELT-207, LLC purchased, at a condominium association foreclosure sale, the subject property now owned by Plaintiffs, located at 450 Alton Road, Unit 2308, Miami Beach, Florida 33139 ("the Property").  The condominium association had foreclosed on the property because the previous owner failed to pay condominium association fees.  Florida Statute § 718.116, permits condominium associations to foreclose under those circumstance to enable them to recover their unpaid fees.

20.     Thereafter, on January 24, 2014, the Property was transferred via indenture to 450 Alton Road, LLC, an entity owned by the Plaintiffs.  The Property was then transferred by quit claim deed to Plaintiffs individually on February 12, 2019.

21.     By purchasing the home via the condominium association's foreclosure action, Plaintiffs acquired title to the property subject to the previous owner's mortgage. This mortgage was also the subject of a foreclosure action.  NATIONSTAR was the servicer of this first mortgage.

22.     On June 11, 2019, Plaintiffs contacted NATIONSTAR for the purpose of determining what outstanding balances remained unpaid on the mortgage so the Property could be purchased with clear title.  On June 12, 2019 Plaintiffs received a facsimile transmission from NATIONSTAR representing to be a "Payoff Statement," which contained "Total Amount to Pay the Loan in Full" though July 10, 2019.  A copy of the June 12, 2019 Payoff Statement is attached hereto as Exhibit "A."

23.     This Payoff Statement contained in fine print at the bottom of the page the statement that "Nationstar Mortgage, LLC d/b/a Mr. Cooper is a debt collector." "This is an attempt to collect a debt and any information obtained will be used for that purpose."

24.     The Payoff Statement stated an inflated "Total Amount to Pay the Loan in Full" of $926,696.84.   Within that total amount contained a line item of "Escrow Advances" of $120,370.26 and "Lender Paid Expenses" of $19,769.45.   NATIONSTAR did not provide evidence as to how these purported "advances" and "expenses" were calculated, whether they may be disputed, or what provision of the mortgage instrument gave rise to them.  As Plaintiffs would come to discover, this purported total amount contained almost $12,000.00 in overstated and fraudulent fees, such as unnecessary flood and hazard insurance, and numerous property inspections which did not occur.

25.     Despite not being allowed to charge for flood and hazard insurance, the Payoff Statement indicated a future charge for "Projected Estimated Disbursements" which contained a line item of "CONDOMAS FLD" totaling $2,154.60 and apparently being due December 10, 2019.  In very fine print under these "Projected Estimated Disbursements," NATIONSTAR identifies that they "will continue to make disbursements of all escrow items (hazard, flood…) up to the date of payoff." This reveals that the unallowable charges for flood and hazard insurance are contained within the overstated amount of the "Escrow Advances" which make up the overstated "Total Amount" NATIONSTAR is attempting to collect.

26.     Moreover, nowhere contained within the June 12, 2019 Payoff Statement to Plaintiffs are the required statements that Plaintiffs could dispute the amount of the debt.  The FDCPA requires these "validation notices" to be sent to consumers, such as Plaintiffs and the Class

Members, containing certain information about their alleged debt and their rights with respect to those debts. *See* 15 U.S.C. § 1692g(a).

27.    Pursuant to § 1692g(a) of the FDCPA, a debt collector must send this notice "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt," unless the required information was "contained in the initial communication or the consumer has paid the debt." *Id.*, § 1692g(a). The validation notice must advise the consumer of "the amount of the debt." 15 U.S.C. § 1692g(a)(1). And the validation notice must advise the consumer of their rights to dispute the debt in writing, and to request, in writing, that the debt collector "obtain verification of the debt or a copy of a judgment against the consumer" and mail "a copy of such verification or judgment" to the consumer. *Id.*, § 1692g(a)(4).

28.    NATIONSTAR failed to comply with § 1692g(a)(1) by not specifying in a clear, intelligible manner the amount of the debt allegedly owed, and NATIONSTAR failed to comply with §§ 1692g(a)(4)-(5) by neither providing the consumer (Plaintiffs) with a statement that if they notify the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and mail a copy of such verification or judgment to the consumer, nor providing the consumer a statement that upon Plaintiffs' written request within the thirty-day period, the debt collector will provide Plaintiffs with the name and address of the original creditor, if different from the current creditor.

29.    Thereafter on June 25, 2019 Plaintiffs sent a communication to NATIONSTAR and its counsel pursuant to Fla. Stat. § 701.04.  Such a communication is colloquially known as an "estoppel letter," and is governed by the aforementioned Florida Statute.

30.     Pursuant to Fla. Stat. § 701.04(1)(a), it is a violation of the statute, for the lender or its agents to deliberately inflate amounts properly due under or secured by a mortgage. *Laptopplaza, Inc. v. Wells Fargo Bank, NA*, 276 So. 3d 375, 376 (Fla. 3d DCA 2019).

31.     In response to Plaintiffs June 21, 2019 request, Plaintiffs received a letter, on June 25, 2019, from NATIONSTAR's agent and counsel.  The June 25, 2019 letter also contained and restated charges that were overstated and not allowed by the mortgage instrument or applicable law.

32.     Specifically, the "Estoppel Letter" states in pertinent part as follows:

I have the privilege of  representing Nationstar Mortgage LLC d/b/a Mr. Cooper, which is the servicer and attorney-in-fact for Plaintiff, Wilmington Trust, National Association, as Successor Trustee to Citibank, N.A., as Trustee for Bear Steams Alt-A Trust, Mortgage Pass Through Certificates Series 2006-4 ("Wilmington Trust"). As holder of that certain Final Judgment of Foreclosure dated April 17, 2019, Wilmington Trust responds with the payoff balance pursuant to §§ 701.04(1) and 45.0315, Florida Statutes, as follows:…

1.  Principle: $540,000.00.
……

5.  Flood insurance premiums for the years of 2008 to 2018: $10,185.48.
6.  Miscellaneous advances for the years of 2008 to 2018: $2,154.62.
7.  Property Inspections: $1,128.00.
…….

Total owed through June 25, 2019: **$907,878.85.**

A copy of the June 25, 2019 Estoppel Letter is attached hereto as Exhibit "B."

33.     The repeated inclusion of charges for flood insurance in the June 25, 2019 Estoppel Letter violate Fla. Stat. § 701.04 as condominium association for the Property had, and continues to have in place, a master policy providing for flood insurance and hazard insurance.  As stated above, the Condominium Rider attached to the mortgage, waived the necessity for the purchase of flood and hazard insurance where the condominium association had a master policy in place.

9

34.     Moreover, the "Estoppel Letter" sent to Plaintiffs pursuant to Fla. Stat. § 701.04, did not contain an accurate payoff balance, for more than just the inclusion of the improper flood/hazard insurance charges.  Indeed, as referenced above, there existed addition fees that were overstated, excessive, and non-existent.  Specifically, the charges purporting to be "Miscellaneous advances for the years of 2008 to 2018" totaling $2,154.62 are completely improper.  There is no indication how these charges were derived, how they were calculated, where in the mortgage they are allowed, or if they could be disputed.  Curiously, the total for these "miscellaneous advances" that span over 10 years is exactly two cents more than projected installment amount for the flood insurance NATIONSTAR was improperly charging.  Discovery will reveal that $2,154.60 was the exact installment amount charged for the flood insurance improperly charged.  Amazingly never having changed in over four (4) years.   This fee is completely fraudulent as the property being a condominium does not have a separate pool for which the maintenance is the responsibility of the property owner.

35.     Additionally, the charges for "property inspections" are defective for the same reasons.  Indeed, although a mortgage servicer is entitled to inspect the property and charge the account of the mortgage in default, and my do so monthly.  However, once the servicer becomes aware the property is occupied, they must coordinate and provide notice to the occupant of the property.  Here the Property was at all times occupied and NATIONSTAR *never* made an attempt to contact or coordinate with Plaintiffs, the continual occupants, to inspect the property.  Indeed, discovery will reveal that NATIONSTAR did not perform the amount, if any, of the "property inspections" it claims and charged for.  *See Daniel v. Select Portfolio Services, LLC*, 159 F. Supp. 3d 1333, 1336 (S.D. Fla. 2016) (holding, marking up fees beyond expenses incurred for services actually rendered stated a violation of the FDCPA)).

36.     Plaintiffs repeatedly informed NATIONSTAR of the master flood insurance policy maintained by the Condominium Association.  Moreover, NATIONSTAR was identified as the certificate holder for the Accord Certificate for the flood association flood insurance covering the Property.  Copies of the Accord Certificate for the years 2018 – 2020 are attached hereto as Exhibit "C."

37.     Plaintiffs have repeatedly disputed and demanded NATIONSTAR to explain and substantiate the charges making up the costs for the "Property Inspections" and "Miscellaneous Advances." However, NATIONSTAR failed to properly provide that information as required.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action individually and on behalf of all individuals similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following class:

> All persons with a Florida address, to whom NATIONSTAR was servicer on a mortgage which encumbered their property, for which NATIONSTAR provided  a debt collection communication not returned as undeliverable to NATIONSTAR, in connection with the collection of a consumer debt, within the applicable statues of limitations, that failed to state (1) "[i]f the debtor notifies NATIONSTAR within 30 days after receipt of this letter that the debt, or any portion of the debt, is disputed, NATIONSTAR will obtain verification of the judgment will be mailed to the debtor by the firm;" or (2) "[u]pon the debtor's request within 30 days after receipt of this letter, NATIONSTAR will provide the debtor with the name and address of the original creditor if different from the current creditor;" and/or (4) collected or attempted to collect, using Payoff Statements that contained (a) overstated fees; or (b) fees that were not allowed under the law or mortgage agreement; (c) or charged for flood and/or hazard insurance premiums in circumstances where the mortgage serviced by NATIONSTAR did not require individual flood and/or hazard insurance where the property was covered by a blanket or master flood and/or hazard insurance policy and where the property was in fact covered by a blanket or master flood and/or hazard insurance policy.

39.     Plaintiffs and Class Members reserve the right to amend the Class definitions as discovery proceeds and to conform to the evidence. Excluded from the Class are persons whose

Payoff Statements according to NATIONSTAR records were returned as undeliverable, persons whose mortgages were for commercial purposes, not for personal, family, or household purposes, and Defendant, and any subsidiary or affiliate of Defendant, and the directors, officers and employees of Defendant or its subsidiaries or affiliates, and members of the federal judiciary.

40.     Under Fed. R. Civ. P. 23(a)(1), the proposed class is made up of at least 40 persons, the joinder of whom are impracticable except by means of a class action.  The disposition of the claims in a class action will benefit both the parties and the Court.  The exact number of class members can be determined through discovery and review of NATIONSTAR's business records.

41.     The proposed class is ascertainable because it is defined by reference to objective criteria.  In addition, and upon information and belief, the names and addresses of all members of the proposed class can be identified in business records maintained by NATIONSTAR.

42.     In conformance with Fed. R. Civ. P. 23(a)(2), all Class Members' claims (including Plaintiffs') are unified in that they arise from the same improper charging and collection practices arising out of materially identical circumstances. Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the proposed class.

43.     Consistent with Fed. R. Civ. P. 23(a)(3), Plaintiffs are members of the Class. Their claims are typical of all other Class Members.  All Class Members' claims are unified, as all were victims of the same collection and charging practices.

44.     Consistent with Fed. R. Civ. P. 23(a)(4), Plaintiffs will adequately represent the class because they have interests in common with the proposed Class Members and they have retained attorneys who are experienced in class action litigation.

45.     Pursuant to Fed. R. Civ. P. 23(b)(3), there is a well-defined community of interest in the questions of law and fact involving and affecting the class to be represented by Plaintiffs.

Common questions of law and/or fact predominate over any questions affecting only individual members of the class.  Common questions include, but are not limited to, the following:

a.  Whether NATIONSTAR's impositions charges for flood and/or hazard insurance and where there already existed a viable master policy, provided by the condominium association violate the FDCPA;

b.  Whether NATIONSTAR's impositions charges for flood and/or hazard insurance and where there already existed a viable master policy, provided by the condominium association violate the FCCPA;

c.  Whether NATIONSTAR's impositions charges for flood and/or hazard insurance and where there already existed a viable master policy, provided by the condominium association violate Fla. Stat. § 701.04;

d.  Whether NATIONSTAR's impositions of "Miscellaneous Advances" or "Escrow Advances" fees that are not traceable back to actual allowed services provided violate the FDCPA;

e.  Whether NATIONSTAR's impositions of "Miscellaneous Advances" or "Escrow Advances" fees that are not traceable back to actual allowed services provided violate the FCCPA;

f.  Whether NATIONSTAR's impositions of "Miscellaneous Advances" or "Escrow Advances" fees that are not traceable back to actual allowed services provided violate Fla. Stat. § 701.04;

g.  Whether Plaintiffs and Class Members are entitled to statutory damages under the FDCPA and the amounts thereof;

h.  Whether Plaintiffs and Class Members are entitled to statutory damages under

the FCCPA and the amounts thereof; and

   i.   Whether Plaintiffs and Class Members are entitled to statutory damages under Fla. Stat. § 701.04 and the amounts thereof.

46.   Further, the prosecution of separate actions by individual members of the class would create a risk of:

   a.   Inconsistent or varying adjudications concerning individual members of the class that would establish incompatible standards of conduct for the defendant opposing the class; and

   b.   Adjudication with respect to individual members of the class that would, as a practical matter, be dispositive of the interests of other members not parties to such adjudications, and/or substantially impair or impede the ability of other non-party class members to protect such individual interests.

47.   The class action method is appropriate for the fair and efficient prosecution of this action.

48.   Individual litigation of all claims that might be asserted by all class members would produce such a multiplicity of cases that the judicial system, having jurisdiction of the claims, would remain congested for years.  Class treatment, by contrast, provides manageable judicial treatment calculated to bring a rapid conclusion to all litigation of all claims arising out of the conduct of the defendant.

49.   The certification of the class would allow litigation of claims that, in view of the expense of the litigation, may be an insufficient amount to support separate actions.

## COUNT I

### (Fair Debt Collection Practices Act 15 USC §§ 1692e, 1692f)

50.     Plaintiffs repeat and reallege paragraphs 1 through 49 as if fully stated herein.

51.     Plaintiffs and each Class Member was a "consumer" as defined by 15 U.S.C. § 1692a(3).

52.     The mortgage loans encumbering the property of Plaintiffs and Class Members, which NATIONSTAR service, are debts under the FDCPA because each is "an[] obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . [that is]…primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5)

53.     NATIONSTAR is a "debt collector" of those mortgage loans as defined by 15 U.S.C. § 1692a(6) because it regularly attempts to collect, and collects, amounts owed or asserted to be owed or due another, including the mortgage debts from Plaintiffs and Class Members via Payoff Statements. The Payoff Statement described above indeed uniformly confirmed this by identifying NATIONSTAR as a debt collector. And NATIONSTAR acquired the servicing rights of Plaintiffs and each Class Member's mortgage after they were in default.

54.     NATIONSTAR engaged in direct "communications" with Plaintiffs and Class Members as defined by 15 U.S.C. § 1692a(2) when it sent them or their representatives Payoff Statements, purportedly demanding money due for reinstatement or payoff of their mortgage loans.

55.     The FDCPA creates a private right of action under 15 U.S.C. § 1692k.

56.     Congress created shared, substantive statutory rights of Plaintiffs and the Class Members to be privately enforced and protected under the FDCPA, which NATIONSTAR has violated. *See* 15 U.S.C. §§ 1692, 1692e, 1692f.

57.     15 U.S.C. §1692e states, in relevant part,

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

……

(2) The false representation of—
(A) the character, amount, or legal status of any debt; or
(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
………

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

58.    15 U.S.C. § 1692f states, in relevant part,

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

59.    Based on the foregoing allegations, NATIONSTAR used deceptive means of collecting debts—which contained illegal fees for unnecessary flood insurance, "Escrow Advances" (which contained illegal fees for unnecessary flood insurance), and "Lender Paid Expenses" fees and the "Total Amount to Pay Loan in Full" incorporating them—in violation of 15 U.S.C. § 1692e(10), because it represented them in Payoff Statements in a confusing, inaccurate manner, or in a manner that would likely mislead a consumer.

60.    Based on the foregoing allegations, NATIONSTAR violated 15 U.S.C. § 1692e(2)(A) because through its Payoff Statements imposing "Escrow Advances" (which contained illegal fees for unnecessary flood insurance), and "Lender Paid Expenses" fees and the "Total Amount to Pay Loan in Full" incorporating them, it falsely or in a misleading manner stated,

16

or mispresented, the amount, character, or status of the amounts needed to payoff Plaintiffs' and Class Members' mortgage debts.

61.     Based on the foregoing allegations, NATIONSTAR violated 15 U.S.C. § 1692e(2)(B) when through its Payoff Statements imposing "Escrow Advances" (which contained illegal fees for unnecessary flood insurance), and "Lender Paid Expenses" fees and the "Total Amount to Pay Loan in Full" fees, it falsely or in a misleading manner stated, or mispresented, the compensation that it might lawfully receive from Plaintiffs and Class Members.

62.     Based on the foregoing allegations, NATIONSTAR used unfair means of collecting amounts for "Escrow Advances" (which contained illegal fees for unnecessary flood insurance), and "Lender Paid Expenses" fees and the "Total Amount to Pay Loan in Full" incorporating them in violation of 15 U.S.C. § 1692f, because the amounts were not expressly authorized by Plaintiffs' and Class Members' mortgage instruments creating their debts as they must be under those instruments, or they were not permitted by law.

63.     These violations of FDCPA caused injury to Plaintiffs and Class Members by violating the foregoing substantive FDCPA rights.

64.     As a result of these violations, Plaintiffs and Class Members are entitled to statutory damages together with reasonable attorney's fees and costs under 15 U.S.C. § 1692(k).

### COUNT II

**(Fair Debt Collection Practices Act 15 USC § 1692g(a)(4))**

65.     Plaintiffs repeat and reallege paragraphs 1 through 49 as if fully stated herein.

66.     The FDCPA at 15 U.S.C. § 1692g(a)(4) provides:

(a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the

17

consumer has paid the debt, send the consumer a written notice containing

\*\*\*\*\*

(4)  a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

67.     NATIONSTAR's June 12, 2019 communication did not contain the proper disclosures required by 15 U.S.C. § 1692g(a)(4), nor did NATIONSTAR provide such disclosures within five days thereafter.

68.     Specifically, the June 12, 2019 communication violated 15 U.S.C. § 1692g(a)(4) by failing to inform Plaintiffs that NATIONSTAR need only mail verification of the Debt to Plaintiffs, or a copy of any judgment, if Plaintiffs notified NATIONSTAR that Plaintiff disputed the Debt, or any portion thereof, in writing.

69.     As a result, NATIONSTAR violated 15 U.S.C. § 1692g(a)(4).

70.     The harm suffered by Plaintiffs is particularized in that the violative initial debt collection letter failed to give Plaintiffs statutorily-mandated disclosures to which Plaintiffs were entitled.

71.     NATIONSTAR's actions invaded a specific private right created by Congress, and the invasion of said right creates the risk of real harm. *See Church v. Accretive Health, Inc.*, 654 F. App'x 990, 995 (11th Cir. 2016); *Macy v. GC Servs. L.P.*, 897 F.3d 747, 761 (6th Cir. 2018) ("In sum, Plaintiffs have satisfied the concreteness prong of the injury-in-fact requirement of Article III standing by alleging that GC's purported FDCPA violations created a material risk of harm to the interests recognized by Congress in enacting the FDCPA.").

## COUNT III

### (Fair Debt Collection Practices Act 15 USC § 1692g(a)(5))

72.    Plaintiffs repeat and reallege paragraphs 1 through 49 as if fully stated herein.

73.    The FDCPA at 15 U.S.C. § 1692g(a)(5) provides:

> (a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing –
>
> *****
>
> (5)   a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

74.    NATIONSTAR's June 12, 2019 communication did not contain the proper disclosures required by 15 U.S.C. § 1692g(a)(5), nor did NATIONSTAR provide such disclosures within five days thereafter.

75.    Specifically, the June 12, 2019 communication violated 15 U.S.C. § 1692g(a)(5) by failing to inform Plaintiff that NATIONSTAR need only provide Plaintiffs the name and address of the original creditor, if different from the current creditor, if Plaintiffs notified NATIONSTAR of Plaintiffs request for that information in writing.

76.    As a result, NATIONSTAR violated 15 U.S.C. § 1692g(a)(5).

77.    The harm suffered by Plaintiffs is particularized in that the violative initial debt collection letter failed to give Plaintiffs statutorily-mandated disclosures to which Plaintiffs were entitled.

78.     NATIONSTAR's actions invaded a specific private right created by Congress, and the invasion of said right creates the risk of real harm. *See Church*, 654 F. App'x at 995; *Macy*, 897 F.3d at 761.

## COUNT IV

### (Florida Consumer Collection Practices Act § 559.72(9), Fla. Stat)

79.     Plaintiffs repeat and reallege paragraphs 1 through 49 as if fully stated herein.

80.     Section 559.72, Florida Statutes, of the FCCPA mandates that "no person" shall engage in certain practices in collecting consumer debts.

81.     NATIONSTAR is a "person" within the meaning of the FCCPA.

82.     The mortgage loans encumbering the properties of Plaintiffs and Class Members, and being serviced by NATIONSTAR, are each a "debt" under the FCCPA because each one is "an[] obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." § 559.55(6), Fla. Stat.

83.     The FCCPA creates a private right of action. See § 559.77, Fla. Stat.

84.     The Florida Legislature created shared, substantive statutory rights of Plaintiffs and Class Members to be enforced and protected privately under the FCCPA, which NATIONSTAR violated. §§ 559.72, 559.72(9), 559.77, Fla. Stat.

85.     Under Section 559.72, Florida Statutes,

In collecting consumer debts, no person shall:

……

20

(9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows that the right does not exist.

86.     Based on the foregoing allegations, NATIONSTAR violated Section 559.72(9), Florida Statutes, by attempting to collect "Escrow Advances" (which contained illegal fees for unnecessary flood insurance), and "Lender Paid Expenses" fees and the "Total Amount to Pay Loan in Full" incorporating them, when, as stated above, it knew that the fees, and as a corollary, the total amounts incorporating them, were not legitimate debts.

87.     Based on the foregoing allegations, NATIONSTAR violated Section 559.72(9), Florida Statutes, by attempting to collect "Escrow Advances" (which contained illegal fees for unnecessary flood insurance), and "Lender Paid Expenses" fees and the "Total Amount to Pay Loan in Full" incorporating them, when, as stated above, it knew it had no legal right to collect the fees, and as a corollary, no legal right to collect the total amounts incorporating them.

88.     These violations of FCCPA caused injury to Plaintiffs and Class Members by violating the foregoing substantive FCCPA rights.

89.     As a result of these violations, Plaintiffs and Class Members are entitled to statutory damages together with reasonable attorney's fees and costs under Section 559.77, Florida Statutes.

**COUNT V**

**(Violation Florida Statute § 701.04)**

90.     Plaintiffs repeat and reallege paragraphs 1 through 49 as if fully stated herein.

91.     Section 701.04, Florida Statutes, provides for a statutory cause of action for the deliberate inflation of amounts properly due and secured by a mortgage.

92.     Based on the foregoing allegations, NATIONSTAR violated Section 701.04, Florida Statutes, by attempting to collect "flood insurance premiums for the years of 2008 to 2018,

and "Miscellaneous advances for the years of 2008 to 2018," and "Property Inspections" fees and the "Total owed through" incorporating them, when, as stated above, it knew that the fees, and as a corollary, the total amounts incorporating them, were not legitimate debts and in fact deliberately inflated.

93.     These violations of Section 701.04 caused injury to Plaintiffs and Class Members by violating the foregoing statutory rights.

94.     As a result of these violations, Plaintiffs and Class Members are entitled to statutory damages together with reasonable attorney's fees and costs under Section 701.04, Florida Statutes.

## JURY DEMAND

95.     Plaintiffs respectfully requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, on behalf of themselves and the Class, respectfully requests this Court to award against NATIONSTAR in favor of Plaintiffs and the Class all of the following:

a.   Certifying Plaintiffs' claims for class treatment under Federal Rules of Civil Procedure 23(a) and (b)(3), appointing Plaintiffs as Class Representatives, and appointing Plaintiffs' attorneys as counsel for the Class;

b.   A judgment for statutory damages under the FDCPA and/or the FCCPA and/or Fla. Stat. § 701.04;

c.   A judgment for costs and reasonable attorneys' fees under the FDCPA and/or the FCCPA and/or Fla. Stat. § 701.04; and,

d.   Any other relief for Plaintiff and the Class the Court deems just and proper.

Dated: June 12, 2020.

By: *Scott D. Hirsch* _____

Scott David Hirsch
**SCOTT HIRSCH LAW GROUP**
Fla. Bar No. 50833
7301 W Palmetto Park Road
Suite 207A
Boca Raton, FL 33433
Tel: (561) 569-7062
Email: scott@scotthirschlawgroup.com

Erika Denise Rodriguez
**RODRIGUEZ LAW & ADVOCACY, P.A.**
7301 W Palmetto Park Road
Suite 207A
Boca Raton, FL 33433
Tel: (561) 800-4177
Email: Erika@rodriguezlawpa.com

Jessica L. Kerr
**THE ADVOCACY GROUP**
200 S.E. 6th Street, Suite 504
Fort Lauderdale, FL 33301
Tel: (954) 282-1858
Email: service@advocacypa.com

*Attorneys for Plaintiff*